**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LAKE COUNTY PRESS, INC.**, an Illinois Corporation, | |
| Plaintiff, | Civil Case No.: 1:23-CV-10066 |
| v. | Judge Lindsay C. Jenkins |
| **THOMAS MEITZLER**, an Illinois resident, and **THE GRAPHIC ARTS STUDIO, INC.**, an Illinois Corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANT THOMAS MEITZLER'S BRIEF REGARDING HIS AFFIRMATIVE
DEFENSE TO PLAINTIFF'S BREACH OF CONTRACT CLAIM AND HIS
COUNTERCLAIM**

In accordance with the Court's Order dated July 6, 2026 [Dkt. 184], Defendant Thomas Meitzler ("Meitzler"), by and through his attorneys, Buckley Fine, LLC, states the following for his brief regarding his affirmative defense to Plaintiff's breach of contract claim and his counterclaim:

**The Court's question: How is the precise amount Meitzler says he is owed under the commission policy a question of fact for the jury to decide at trial (not a calculation that should be made by the Court as a matter of contract interpretation)?**

Meitzler believes the amount he is owed under the commission policy is a calculation the Court should make as a matter of contract interpretation (not a question of fact for the jury to decide at trial). Section A.5 of Defendants' Reply in Support of Motion for Summary Judgment asserted that Plaintiff failed to comply with the commission policy by treating timely paid invoices as "late." [Dkt. 145 at 8-9 (Section A.5)]. That said, based on the fact that the jury is the trier of fact, it may need to determine the amount of damages Meitzler has not been paid.

1

**A. Meitzler's precise calculation of commission amount he is owed ($7,233.76) by applying the commission policy's relevant terms.**

Meitzler is owed $7,233.76 based on an application of the commission policy's relevant terms. Plaintiff's internal invoicing practice and unilateral decision to not credit Meitzler with commissions for timely paid invoices improperly reduced Meitzler's commissions by $32,840.89 ($17,188.60 for Invoices 209321-01 to 209321-64; $5,974.73 for Invoices 213677-01 to 213677-27; $3,176.47 for Invoices 216999-01 to 216999-32; $4,176.75 for Invoices 218348-01 to 218348-39; and $2,324.34 for Invoice 197077), which is $7,233.76 more than Plaintiff claims Meitzler overdrew ($25,607.14). [Dkt. 120-7 at 150:5-151:24]. Plaintiff's internal convenience did not override Meitzler's right to be credited with commissions when Plaintiff received timely payments from customers for individual invoices Plaintiff's accounting department created and sent to those customers.

*1. Relevant terms of the commission policy.*

Plaintiff's commission policy became effective on April 1, 2019 (one year before Meitzler's employment began). [Dkt. 120-6 at 72-73 (commission policy); Dkt. 29-5 at 2 (employment agreement)]. The relevant terms of the commission policy are: "Invoices dated April 1st and thereafter, Sales Representatives will be paid commissions on those invoices when LCP is paid;" "LCP invoice must be paid in full for commissions to be eligible for payment;" and "Invoices dated April 1st and after, commission adjustments for late payment will be calculated as follows . . . ." [Dkt. 120-6 at 72].

*2. Invoices 209321-01 to 209321-64*

On August 31, 2022, Plaintiff created 62 invoices, which were numbered 209321-01 to 209321-30, 209321-32 to 209321-47, and 209321-49 to 209321-64, which Plaintiff's accounting

department sent to the customer on September 21, 2022 (22 days after the invoice date). [Dkt. 120-6 at 72:4-85:5]. Two invoices (209321-31 and 209321-48) were not created or sent with an initial email to the customer. [*Id.* at 72:14-75:1]. The total sale amount for these 64 invoices, which were all dated August 31, 2022, was $318,298.33 [*Id.* at 80:19-81:4]. The maximum  amount of commission Meitzler could have received was $31,829.83 (10% of the amount invoiced). [*Id.* at 71:19-23]. The customer paid 60 of those invoices ($286,476.54), in full, within 90 days (on or before November 4, 2022). [*Id.* at 75:12-79:19; Dkt. 120-7, 13:3-16:8].

Under a plain reading of the commission policy, Plaintiff was required to credit $28,647.65 to Meitzler when it booked payment for 60 invoices. [Dkt. 120-6, p. 72 (commission policy)]. Instead, Plaintiff chose to account for all 64 invoices (two of which were not created until July 2023) as one "internal invoice." [*Id.* at 82:24-84:15]. The invoices Plaintiff created and sent to the customer contradict testimony from Plaintiff's Director of Finance and Accounting, which asserted Plaintiff's computer system could not create 64 separate invoices because Plaintiff only produced "one job." [*Id.* at 83:21-87:8 and 239-300 (the Job Number identified in every invoice is "Many")].

Plaintiff received payment for the two invoices that were not initially sent to the customer sometime between November 25, 2023, and December 15, 2023. [*Id.* at 201 (Exhibit 68)]. Instead of deducting Meitzler's commission by $1,909.30 (to account for a 60% adjustment for the 4 invoices that the customer paid more than 150 days after the date on the invoices), Plaintiff negatively adjusted Meitzler's *entire* commission for that job by $19,097.90. *Id.* Meitzler was credited with $12,731.93 of commissions instead of $29,920.53 (the amount Plaintiff should have credited – $28,647.65 for the 60 invoices paid within 90 days and $1,272.87, which represents a 60% reduction of commission for the 4 invoices that the customer paid more than 150 days after

3

the date on the invoices). [*Id.*; see Defendants' proposed exhibit 00M]. That is a difference of $17,188.60. [Defendants' proposed exhibit 00M].

   3.   *Invoices 213677-01 to 213677-27*

Plaintiff's "internal invoicing" resulted in improper commission deductions to Invoices 213677-01 to 213677-27 (all of which were dated March 16, 2023). [Id. at 97:23-102:19 and 185 (Exhibit 68)]. The total sale amount for these 27 invoices was $147,593.91, the maximum amount of commission Meitzler could have received was $10,331.56 (7.0%), the customer paid 26 of 27 invoices within 90 days ($142,255.27), and Plaintiff credited Meitzler with $4,132.62 of commissions instead of $10,107.35 (the amount Plaintiff should have credited), which is a difference of $5,974.73. [*Id.*; Defendants' proposed exhibit 00R].

   4.   *Invoices 216999-01 to 216999-32*

Plaintiff's "internal invoicing" resulted in improper commission deductions to Invoices 216999-01 to 216999-32 (all of which were dated June 30, 2023). [Dkt. 120-7, 92:9-95:7 and Dkt. 120-6, p. 226 (Exhibit 68)]. The total sale amount for these 32 invoices was $174,244.16, the maximum amount of commissions Meitzler could have received was $5,575.81 (3.2%), the customer paid 31 of 32 invoices within 90 days ($165,440.86), and Plaintiff credited Meitzler with $2,230.32 of commissions instead of $5,406.79 (the amount Plaintiff should have credited), which is a difference of $3,176.47. [*Id.*; Defendants' proposed exhibit 00V].

   5.   *Invoices 218348-01 to 218348-39*

Plaintiff's "internal invoicing" resulted in improper commission deductions to Invoices 218348-01 to 218348-39 (all of which were dated September 5, 2023). [Dkt. 120-7, 65:19-70:12 and Dkt. 120-6, p. 210 (Exhibit 68)]. The total sale amount for these 39 invoices was 141,654.02, the maximum amount of commissions Meitzler could have received was $7,366.01 (5.2%), the

customer paid 37 of 39 invoices within 90 days ($32,411.02), and Plaintiff credited Meitzler with $2,946.40 of commissions instead of $7,077.63 (the amount Plaintiff should have credited), which is a difference of $4,176.75. [*Id.*; Defendants' proposed exhibit 00Z].

6.   *Invoice 197077*

Through a credit memorandum dated November 30, 2023, Plaintiff deducted all of Meitzler's commission for Invoice 197077, which was dated April 13, 2021, based on a purported conversation between Plaintiff's accounting staff and Meitzler before Meitzler resigned on September 1, 2023. Plaintiff should have credited Meitzler $2,324.34 (40% of $5,810.86). [Dkt. 120-7 at 16:9-21:23, Dkt. 120-6 at 201 (Exhibit 68), and Defendants' proposed exhibit 0CC].

**B. Plaintiff's first breach of the commission policy occurred on January 10, 2023. Meitzler learned of that breach the same day.**

Plaintiff's first breach of the commission policy occurred on January 10, 2023. On that date, Plaintiff's Chief Financial Officer sent an accounts receivable aging report to Meitzler that identified (a) incorrect dates on which two payments were made regarding Invoices 209321-01 to 209321-064 (December 16, 2022 instead of November 2, 2022 and November 4, 2022) and (b) commissions for those payments were not credited to Meitzler. [Plaintiff's proposed exhibit 25 at 93-103 (LCP-00235411-LCP-00235422; Dkt. 120-6 at 76:6-77:1; Plaintiff's proposed exhibit 31 at 245-246 (LCP-00230007-LCP-0023008)].

Meitzler had constructive knowledge of the breach when he received that email. As noted above, Plaintiff failed to credit Meitzler with commissions for a number of subsequent payments.

**C. Meitzler's knowledge on his first-to-breach arguments means he cannot continue asserting his affirmative defense that Plaintiff's prior material breach relieved him of his contractual obligations.**

Based on the Illinois Supreme Court's holding in *PML Development LLC v. Village of Hawthorn Woods*, Meitzler's continued acceptance of the benefits of the employment agreement

for approximately nine months after he learned of Plaintiff's breach required Meitzler to continue performing his obligations under the employment agreement to avoid liability for a breach. 2023 IL 128770, ¶¶ 51-52. Meitzler cannot assert that his performance was excused by a prior material breach

**D. Relevant case law that applies "election to proceed or terminate" principles under circumstances like this case holds that Meitzler may continue to pursue his counterclaim for breach of contract.**

Meitzler's election to keep the employment agreement in force did not constitute a waiver of his right to recover damages from Plaintiff. *Id.* at ¶ 52 (citing *Dustman v. Advocate Aurora Health, Inc.*, 2021 IL App (4th) 210157, ¶ 38 (quoting FARNSWORTH ON CONTRACTS § 8.15, at 437-38 (2d ed. 1998)).

In *Og Plumbing v. Basecamp Old Irving Park LLC*, the trial court determined that parties breached a contract at different times: the sewer and water subcontractor breached it by failing to perform work in accordance with industry standards, after which the property owner and general contractor breached the contract by failing to make progress payments. 2024 IL App (1st) 221813-U, ¶¶ 49-51. Instead of repudiating the subcontract, the property owner and general contractor treated the breach as a partial breach, which meant they continued to be bound by the subcontract. *Id.* at ¶ 49. Their "later failure to make progress payments was a breach, but that did not waive their right to recover damages arising from [the subcontractor's] partial breaches." *Id.* at ¶ 51 (citing *Dustman*, 2021 IL App (4th) 210157, ¶¶ 52, 66; Restatement (Second) of Contracts § 236(2) (1981)). Under the circumstances, "'[e]ach party had a viable breach of contract claim.'" *Og Plumbing*, 2024 IL App (4th) 221813-U, ¶ 51 (quoting *PML*, 2023 IL 128770, ¶ 66).

In *Beard DesignBuild, Inc. v. Lacy*, the trial court awarded damages to both parties (a contractor and the property owner) after a bench trial. 2025 IL App (3d) 240115-U, ¶ 97. Applying

6

the principles from *PML*, the Appellate Court held that the property owner converted any material breaches of the contract into partial breaches by allowing the contractor to continue working. *Id.* at ¶ 108. The property owner's subsequent refusal to permit the contractor to finish performing the and failure to make payments was also a breach. *Id.* at ¶ 109. Therefore, the trial court's determination that both parties breached the contract was not against the manifest weight of the evidence. *Id.* at ¶¶ 108-109.

### E. By electing to proceed with the employment agreement, Meitzler cannot argue that Plaintiff failed to substantially comply with the employment agreement's terms.

Meitzler's election to continue accepting the benefits of the employment agreement eliminated his ability to argue that Plaintiff failed to substantially comply with the terms of the employment agreement because he has lost the right to assert the first-to-breach rule. *PML*, 2023 IL 128770, ¶ 21.

Dated: July 8, 2026

Respectfully submitted,

By: */s/ Samuel J.H. Weyers*

Ronald B. Kowalczyk (IL Bar No. 6274373)
Samuel J.H. Weyers (IL Bar No. 6307309)
rkowalczyk@buckleyfinelaw.com
sweyers@buckleyfinelaw.com
Buckley Fine, LLC
201 S. Grove Ave., 4th Floor
Barrington, IL 60010
Telephone: (847) 381-0011

*Attorneys for Defendants Thomas Meitzler
and The Graphic Arts Studio, Inc.*

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court using the CM/ECF system.

By: */s/ Samuel J.H. Weyers*